Our second case this morning is number 15-3047, Shenwick v. GSA, and you're ready Mr. Peterson. Good morning, your honors. May it please the court, my name is James Peterson, and I'm on behalf of petitioner Linda Shenwick, who joins me here today. Ms. Shenwick is a whistleblower. She has a long history of whistleblower during her 30 years of public service. This is not in dispute. This was true in her prior job when she was a high-level official of the State Department, and it continued in her most recent job at the General Services Administration. For her efforts, however, she has not been shown appreciation for her public service. Instead, she has been retaliated against as a whistleblower, and most recently removed from a job in which she undisputedly was successful, and sent into a job where she has no significant duties. This is undisputed in this case. But the issue is whether there was clear and convincing evidence that she would have been transferred anyway, right? Correct. That is correct. Why was the board wrong about that? The board was wrong because the board relied on the conclusion of the administrative judge, who specifically relied on the findings of an internal investigation that the agent did. The reliance on this constituted a clear error of law. This investigation, which occurred in approximately 2009, was not of significant significance to the agency, such that they ever even showed the results of it to the petitioner, Ms. Shenwick. Well, she had it during the proceeding, right? She had it later on after we demanded it, threatening re-election. She did not have an opportunity to review it and respond to it in the course of this proceeding, right? Subsequently. Not subsequently. During this proceeding that we're reviewing here, she had the opportunity, right? But she was deprived of the opportunity. Yes, that's correct. But she was deprived of the opportunity to respond to it on a contemporaneous way at the time it was written. She did not have any opportunity to rebut any of these vague conclusions. Importantly... Can you elaborate on that? I mean, she did not have the opportunity in the administrative judge's hearing to show that what was said in this management inquiry document was erroneous? She did not have the opportunity, no. She did not have the opportunity at the time the report was being drafted. I think you're aware that's not what I asked you. Yes, I'm aware. I'm agreeing. There was back and forth during the administrative hearing. But she could have called as witnesses or otherwise examined whoever went to management with the complaints that were then recorded in this management inquiry document and show that, in fact, this was all incorrect? Well, actually, no, since most of the complaints were anonymous. And that just goes to show how this report, so-called report, was... Well, couldn't she have pointed that out to the board and the board judge could have given them whatever weight they wanted? I mean, what difference does it make that you could do it contemporaneously or at the board? It still would have been anonymous back when the report was issued. The findings of the report that were important and were relied on by the administrative judge was not any specific allegations of wrongdoing. As a matter of fact, as the administrative judge says at least three times, there was no specific finding of any wrongdoing. The report, though, came up, although this was never released at the time. The report, however, said there were vague ideas about morale and other things in the office. And only when the agency decided they wanted to take action years later against Ms. Schenwick did they pull this report out of the drawer. And then all of a sudden it was like, oh, we have this long history of problems. But you could attack the credibility of that report during the hearing and the A.J. could give it whatever weight he or she chose, right? Well, the point is that this was so... What different information would you have gotten if you would have been allowed to look at it prior to the time that would have changed now? Well, that is a good question. We do not know that because she was never given the opportunity. She was never given the opportunity to file a grievance at the time. If there had been some sort of finding in this report that something had occurred, the passage of time made it impossible for her to rebut what was happening in this so-called report. But that seems to be inconsistent with the way these board proceedings operate. The fact that there are past documents asserting bad conduct or subpar conduct by an employee, those are routinely considered in board proceedings and people are given the opportunity to rebut it. Isn't that the case? Yes, Your Honor, and that was done. You have to understand, let me try to explain the full perspective here. On one hand, during the hearing, there was a report based on anonymous sources, largely anonymous sources, that was not deemed credible enough to ever share at the time. Did you ever ask to have the anonymous sources identified so that those persons could be deposed or examined? That was not done, but what we did introduce at the hearing was an uncontested, years-long history of performance reviews, which demonstrated the petitioner was an outstanding employee. She received, each year, the highest rating. Did the board accept those evidence? She did accept that. So the board had the evidence you wanted to put forward. Did you try to exclude this report? We pointed out repeatedly that... Did you move to exclude the report as unreliable? We did not formally do that. Then isn't all of this just evidence that the AJ can consider and give whatever weight as the trier fact that they're entitled to give it? This is evidence that was so extreme in the sense that... If it was so extreme, why didn't you move to exclude it? Because we pointed out repeatedly the flaws in the report. All of that was done. The administrative judge erred, however, by ignoring the uncontested record of what was important. The performance reviews are intended to provide a contemporaneous record of what is happening with the employee. None of these so-called allegations from this so-called report ever appeared. There was no reason for us to think that the weight of this report would outweigh the meaningful documentary record of the performance reviews. If I may, the second issue of which is important in this court we respectfully suggest you consider is that what happened here was the use of what is now becoming more and more common in federal employment of virtual employment or teleworking. In most cases, however, this kind of arrangement is done for the benefit of an employee. Employees extended the opportunity to do this on a voluntary basis at the employee's discretion. In this case, however, this was turned upside down. The agency, choosing to not want the employee in their office anymore, assigned the employee to an entirely different geographic region. That's because they abolished her position. And so they offered her a bunch of positions, which she declined. And then they ultimately put her in the position with the Washington, this Washington-based office. But rather than make her move to Washington, they afforded her the opportunity to work virtually in the same building she worked in previously. With respect, Your Honor, that is not correct. The agency in its brief states that she declined. She never declined. There was never any specific job offer. I don't see any place where she cooperated in trying to put forward resumes or the like in finding those other jobs. A resume was provided. It really doesn't matter, I mean, about those other jobs. Ultimately, her position was abolished. They transferred her, which they have the right to do, to another position. How is it a geographic reassignment when all she did was move four floors in the same building? Because the critical difference is that at any point, perhaps at the end of this proceeding, the agency will say, ah, now we're done, we're going to send you wherever we like. Well, then that may be an adverse action that's appealable at that point. At this point, I don't see how it's a geographic reassignment. Because you can predict that the agency will say, well, you were reassigned back in 2011. Nothing has changed. They'll just say that we took away the voluntary telework, and that's where we'll find ourselves. That's the catch-22 we're trying to highlight, is that in this case, virtual employment is being used as a club against the whistleblower and not as something for the benefit. She's been isolated from others. She's been given no significant work for four years, and the agency, at its whim, afterwards will be able to rescind the telework, leaving the employee without an option. Can I just ask, I should know the answer to this, but what's the date of the management inquiry report? 2009. 2009, approximately. Some time or other? Yes. But this is that 605 to 616 of the red appendix, and that document doesn't have a date on it, is that right? That may be right. The reason I guess I want to understand what I can about that is you make, I think, a fairly big deal about how it was years earlier, and I guess I want to understand exactly what time period we're talking about. It was years earlier. This process went on, so it was at least two years later. Let's assume it's December 31st, 2009, because you haven't given anything within the year 2009, and then my understanding was that sometime in either 2010 or by the end of the first half of 2011, Ms. Shentwick knew about the management inquiry report. It was roughly July 2011, middle of 2011. This is when she found out for the first time that there was anything adverse to her in this report, when the agency decided that they wanted to do something, and having no other documentary record of any underperformance on her part, they pulled out this, which was an informal inquiry done by low-level employees in essentially the Human Resources Office. It had none of the aspects of due process, and no opportunity during that phase for the employee to contest. Okay. Mr. Peterson, you want to save the rest of your time? Yes, please. Ms. Lister-Sobotkin. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. We ask this Court to affirm the decision below, because the Board correctly determined that the agency would have reassigned Petitioner in the absence of her whistleblowing activities. Let me tell you, there's one thing that you argue in your brief which seems to me to be troubling, and that is that the Board has no jurisdiction to consider a due process violation. I simply don't understand that. If there had been a motion to exclude this report on due process grounds, surely the Board would have the authority to decide whether that report should have been excluded. Yes, Your Honor. That probably is the case. That would have been a procedural question for the Board. The cases that I cited state that in an IRA appeal, the jurisdiction, the scope of review for the Board is limited to the issue of reprisal for whistleblowing. Your Honor, it certainly can decide whether particular evidence was improperly admitted. So, I don't understand your jurisdictional argument. It makes no sense to me. Well, I'll step back for a minute. The way I read Petitioner's argument, their due process argument, her due process argument, is that she had two arguments. First, that there was a due process violation in 2009. That's outside of the scope of the Board. Now, an evidentiary ruling would, of course, be within the scope of the Board. But whether or not her due process rights... Well, that's what they're arguing. They're saying that they shouldn't have considered the report. And that... There's a lack of jurisdiction to consider that issue, is there? I believe that the Board would have jurisdiction to consider the evidentiary issue. Whether or not the Board would have jurisdiction to do anything in response to an alleged violation in 2009, that is outside of the scope of an IRA appeal. But Your Honor is correct that, of course, they have jurisdiction to consider evidentiary matters. Well, that's all they're arguing. Well, and that issue... To the extent that they're arguing that the Petitioner's due process rights were violated at the hearing, that issue has not been preserved. They did not... Petitioner did not object at the hearing. She did not raise that argument in her briefing before the Administrative Judge. She gave the Judge no option to make that evidentiary ruling. And she didn't raise that. As this Court has stated, a party in an MSD proceeding must raise an issue before the Administrative Judge. That's different from the Board's jurisdiction. I mean, you heard before our concerns about some of these jurisdictional arguments that are made, that the government sometimes seems to want to put everything in the jurisdictional box. This is not a jurisdictional defect. They can argue that the report shouldn't have been relied on. It's improper. You admit that. That is true, Your Honor. My argument was, and perhaps I wasn't clear, my argument was that whether or not her rights were violated in 2009 is a separate issue. But as an evidentiary matter, yes. Of course, the Administrative Judge has the discretion to make evidentiary rulings. Is what you're saying... I didn't follow this either, but is what you're saying that the investigation and management action, or inaction, I guess, because they didn't do anything in 2009, isn't the type of adverse action that the Board can't review whether that was proper? Yes, that is correct. They're not asking to have that reviewed. Yes, that doesn't seem to be what they're asking. You seem to recharacterize their argument and say there's no jurisdiction over an argument they don't make. Well, and if that's the case, then I would apologize. The way I read their argument, like I said, is that they're arguing both a violation in 2009 and a violation at the hearing. And, of course, they haven't preserved the issue of whether or not there was a due process violation at the hearing. In addition, even if they had raised that argument before the Board, the essential requirements of due process are noticed and an opportunity to be heard. In this case, the petitioner knew of the report in the middle of 2010. She testified that she discussed the report, not that she read it, but she discussed it with her supervisor in her midyear review in 2010. She received a copy in August of 2011. The hearing was not until 2013, November, more than two years later. So she certainly had ample notice of the report. She also had the opportunity and took the opportunity to question the weight of the report. She testified and called seven witnesses. This satisfies the due process requirements, especially in light of the fact that she did not object to the admission of the report. And evidentiary rulings are within the sound discretion of the Board and its officers. Petitioner's second argument is that she was subject to a management-directed geographic reassignment. There was no geographic reassignment. She remained in the same building. She was never asked to relocate. The case that she relies upon at Miller v. Department of the Interior, first of all, it was... What happens if the agency does what she suggested they could do right after this hearing and revokes the teleworking and says you have to move to Washington? Is that an appealable action? Then she would be in the situation that the petitioner in Miller was in. If she refused to relocate and she was terminated, she would have grounds for an adverse action. These events haven't come to pass yet. Essentially, she's arguing if the agency terminates her right to telework, which hasn't happened, if she's asked to relocate to D.C. and if she refuses, then she might be terminated. None of these have come to happen. So what she's asking for at this point is an advisory opinion. If all of those maybes do, in fact, occur, then she would be in the same situation as Miller and she would be able to bring an adverse action based on a termination under Chapter 75. But at this point, it's not presently adjudicable. The remainder of petitioner's arguments, to the extent that they're separate, go to the weight of the evidence. This is not a de novo review, and the administrative judge and the Board are given deference for their determination of the weight of the evidence, especially in this case where the administrative judge specifically found that petitioner's testimony, at least on certain issues, was not credible based on demeanor determinations. Thank you, Your Honors. Okay. Thank you, Mr. Sobotkin. Mr. Peterson, you've got a little over two minutes here. Just briefly, Your Honor. First, I think what counsel indicated regarding the teleworking privilege illustrates the point quite well. What has happened here is they have the opportunity, as a result of what they're doing, is to withdraw this teleworking privilege at any point, and then they'll be able to say you must report to Washington. And the withdrawal of the teleworking, however, is not – they will almost certainly come back and say it's not the adverse action. It will be the refusal to show up in Washington, which is what she indicated. Even that won't be the adverse action. The adverse action will be their response to the refusal. Right, but that's right. 7512 lists very specific things, right? A removal for you. That's what we're talking about. But it doesn't list the withdrawal of a teleworking privilege. Right. So that's not litigable before the board unless there's some other basis for bringing it to the board, isn't it? I mean, it's not – I mean, if the agency sends her a letter saying we're going to remove the teleworking privileges, but she keeps going to work in New York and keeps doing her job and they don't do anything about it, there's no adverse action, is there? The adverse action is when they actually remove her. Well, unfortunately, we might see that scenario. But if we do, she'll have appeal rights soon. I mean, you're asking us to say basically if the agency revokes her teleworking privileges and if she refuses the reassignment and if they remove her that that's an appealable action. Well, of course it is. But those are three conditional things that have to happen before we would have jurisdiction. Well, that's what – the conundrum here is that they've created the situation where the employee then will be faced with no options other than to – Well, the other option is that the agency actually believes in good faith that it's found her a position that she can work out of in a teleworking capacity forever. And if that's the case, then what adverse action is there for us to consider? Well, if you're suggesting that, then the agency is in good faith. The agency does not dispute, and it's never disputed during the course of this proceeding, that she's had no substantial work for four years. So that's an indication of where the agency is. But finally, on the other argument, as I cited in my brief in stone via FDIC, the due process argument, whether we call it due process or whether we call it simply improper reliance on evidence, can be raised at any time. So thank you, Your Honor. Okay. Thank you, Mr. Peterson. I thank both counsel. The case is submitted.